[No. C065694. Third Dist. Feb. 23, 2011.]

In re D.W., a Person Coming Under the Juvenile Court Law.
NEVADA COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
C.W., Defendant and Appellant.

COUNSEL

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael Jamison, County Counsel, and Leanne K. Mayberry, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—C.W. (father), the father of two-year-old D.W., appeals from an order of the Nevada County Juvenile Court terminating his parental rights and ordering a permanent plan of adoption.

On appeal, father contends the juvenile court erred in finding that the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) did not apply because the notice sent to the tribes was deficient and not meaningful. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2009, the Nevada County Health and Human Services Agency (department) detained father's infant child, D.W., who was four months old. In May 2009, a petition was filed alleging that D.W. came within the provisions of Welfare and Institutions Code[1] section 300, subdivision (b). The petition alleged that the parents were not able to provide the necessary care for the child without supervision and support and they frequently argued in the child's presence.[2] The petition further stated that the child is, or may be, a member of, or eligible for membership in, the Cherokee Nation.

At the initial hearing in May 2009, the juvenile court provided the parents with Judicial Council form No. JV-130 pertaining to Indian heritage and ordered the child detained.

Thereafter, the parents entered denials to the petition's allegations and a jurisdiction hearing was scheduled.

At the jurisdiction hearing, each parent executed a waiver of rights, which the juvenile court found were freely and voluntarily given. Both parents

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The child's mother, K.W., is not a party to this appeal.

submitted to the petition as amended. Father also provided the court with an ICWA form stating that he may be half Cherokee. The court found the allegations in the amended petition to be true, sustained the amended petition, and assumed jurisdiction.

The social worker's report for the disposition hearing stated that "[t]he Department is in the process of obtaining information from extended family members to notice the tribes. The Department provided notice of [the disposition] hearing to the Bureau of Indian Affairs." At the disposition hearing, the parties submitted to the recommendations in the social worker's report. The court adopted the recommendations.

At the six-month review, the social worker's status review report stated that ICWA did not apply. Specifically, in September 2009, the department sent notices to the Bureau of Indian Affairs (bureau) and several Indian tribes. The department received return receipts from all the noticed tribes, and no tribe chose to intervene. The report showed that two tribes, the Cherokee Nation and the United Keetoowah Band of Cherokee Indians, had stated that the child was not eligible for membership. After the report was written, the Eastern Band of Cherokee Indians also stated that the child was not eligible for membership.

The report recommended that reunification services be terminated and that the court set a hearing pursuant to section 366.26. At the review hearing in February 2010, the parents each submitted waivers of reunification services, which were accepted by the juvenile court. The court adopted the department's recommendations and made a finding that ICWA did not apply. A selection and implementation hearing was set for May 2010. Father did not file a writ petition following the setting of that hearing.

In May 2010, father told the juvenile court that he wanted a contested hearing. Following two continuances, the selection and implementation hearing was conducted in late June 2010. Father testified on the issue of the beneficial relationship exception to termination of parental rights. After considering the documentary and testimonial evidence, the court terminated parental rights and ordered a permanent plan of adoption.

## DISCUSSION

Father contends the juvenile court erred when it found that ICWA did not apply, because the notice to the three Cherokee tribes and the bureau misspelled the paternal grandmother's first name and failed to include her middle name. He claims the matter must be remanded for further notice to the tribes and for the juvenile court to make an ICWA finding. We are not convinced.

■ ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) To facilitate participation, notice of the pending proceeding and the right to intervene must be sent to the tribe or to the bureau if the tribal affiliation is not known. (25 U.S.C. § 1912; Welf. & Inst. Code, § 224.2.) Once notice is provided, it must be sent for each subsequent hearing until it is determined that ICWA does not apply. (§ 224.2, subd. (b); *In re Marinna J.* (2001) 90 Cal.App.4th 731, 736 [109 Cal.Rptr.2d 267].)

Because the principal purpose of ICWA is to protect and preserve Indian tribes, a parent's failure to raise an ICWA notice issue in the juvenile court does not bar consideration of the issue on appeal. (*In re Marinna J., supra*, 90 Cal.App.4th at p. 739; see *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 783, fn. 1 [53 Cal.Rptr.3d 251].)

■ Section 224.2, subdivision (a)(5) requires an ICWA notice to include, among other things, the name, birth date, and birthplace of the Indian child, if known; the name of the Indian tribe in which the child is a member or may be eligible for membership, if known; and all names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known.

In this case, the ICWA notice (form ICWA-030), filed on October 2, 2009, identified the "Father's Biological Mother (Child's Paternal Grandmother)" as "Maryanne [P.] [¶] Maryanne [R.] (AKA) [¶] Maryanne [S.] (AKA)." The notice does not identify the authoring employee as a social worker.

As father notes, the record contains two other variants of the paternal grandmother's first name. The disposition report, written by the social worker and filed on June 29, 2009, states that father had advised her that he had been born in Oroville to "Marianne Francis [R.] (now Marianne [P.])." Six pages later, when discussing the paternal grandmother's request for relative placement, the report again identifies her as "Marianne."

Similarly the status review report, prepared by the same social worker and filed on January 15, 2010, identifies the paternal grandmother as "Marianne." However, the report quotes from a placement assessment prepared by Arkansas officials in response to the grandmother's request for relative placement. The quoted material referred to the grandmother as " 'Maryann.' "

■ As the appellant, father has the duty to present error affirmatively by an adequate record; error is never presumed. (*Null v. City of Los Angeles*

(1988) 206 Cal.App.3d 1528, 1532 [254 Cal.Rptr. 492], and cases cited therein.) Because the record does not establish which, if any, of the three spellings of the grandmother's first name is correct, father has not shown affirmatively that the spelling used in the ICWA notice was erroneous.

'Father asks this court to surmise that, when the paternal grandmother "contacted the Department and requested placement of the minor," someone from the department "most likely asked the grandmother to spell her name," and in response she spelled it like it is spelled in the disposition report, "Marianne." But this reasoning applies with greater force to the Arkansas officials who *performed* the placement evaluation and thus were more likely to have obtained the correct spelling ("Maryann") than were the Nevada County officials who had merely *requested* the evaluation. Neither possibility affirmatively demonstrates that the spelling used in the ICWA notice ("Maryanne") was incorrect.

Father next contends the ICWA notice was deficient because it did "not contain all of the grandmother's biographical information." Specifically, the notice did not contain the middle name, " 'Francis,' " that was listed in the disposition report. However, the social worker obtained this spelling (typically the masculine, not feminine, form of the name) during a June 24, 2009, interview with father. Nothing in the record demonstrates that this atypical spelling was correct or that its inclusion in the ICWA notice would have produced a more reliable document.

Assuming the ICWA notice incorrectly spelled the paternal grandmother's first name and omitted a known correct spelling of her middle name, no prejudice appears. There is no claim that any of the other information about the grandmother was incorrect. Father has not shown that the inclusion of a misspelled first name could thwart a search that utilized the grandmother's correct last name, former last names, current address, and date of birth. Had a tribe determined that a person who matched all of those criteria, but who had a slightly different first name, been a member of the tribe or eligible for membership, surely the tribe would have said so.

Moreover, any error could not have been prejudicial because the ICWA notice included the correct names, birth dates, and birthplaces of the paternal grandmother's mother, R.R., and father, R.L.R. There is no contention that this information was insufficient to enable the tribes to determine tribal membership with respect to those ancestors. Nor is there any contention that the paternal grandmother's tribal affiliation arose independently of both of her parents. Because no tribe suggested that either great-grandparent had been a member or eligible for membership, it follows that the paternal grandmother was not eligible regardless of how her name was spelled on the ICWA notice.

## DISPOSITION

The order is affirmed.

Nicholson, Acting P. J., and Duarte, J., concurred.