Filed 12/13/21  Marriage of Pulido CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of MYRIAM and JUAN PULIDO. | D077156 |
| MYRIAM ZULETH PULIDO, | |
| Appellant, | (Super. Ct. No. 17FL000578S) |
| v. | |
| JUAN ALEXANDER PULIDO, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, James T. Atkins, Judge.  Affirmed.

Myriam Zuleth Pulido, in pro. per., for Appellant.

Law Offices of Nancy J. Wilson and Nancy J. Wilson for Respondent.

I.

INTRODUCTION

Appellant Myriam Pulido, proceeding on appeal in propia persona, seeks reversal of an order of the trial court entered after judgment of

dissolution of her marriage to Juan Pulido. In the order from which Myriam[1] appeals, the court ordered the sale of the martial home and set forth the procedure by which the parties were to list the home for sale. Myriam's briefing on appeal is somewhat unclear in many respects. However, we discern that Myriam contends that the trial court abused its discretion in ordering that the marital residence be sold. Myriam also raises related complaints with respect to how the trial court approached resolving the disposition of the marital residence.

To the extent that we can ascertain Myriam's objections to the order requiring the sale of the marital residence, we conclude that they are without merit. We therefore affirm the order of the trial court.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Juan and Myriam were married in 2000 and separated in 2014. They have three children, the oldest of whom is currently 19 and the youngest of whom is 7.

---

[1]    We refer to the parties by their first names for clarity.

[2]    In setting forth the background of his case, we rely in part on documents filed by Juan, pursuant to a request for judicial notice. Juan filed a request that we take judicial notice of a number of documents that were filed in the trial court in the underlying case. Myriam filed an opposition to Juan's request for judicial notice.

To the extent that two of the documents in question were filed in the trial court in the underlying case prior to Myriam's notice of appeal and were relied on by the trial court in the underlying action, we construe the request for judicial notice as a motion to augment the record (Rules of Court, rule 8.155(a)(1) ["[a]t any time, on motion of a party or its own motion, the reviewing court may order the record augmented to include:  [¶]  (A) Any document filed or lodged in the case in superior court"]), and we grant the motion.

2

In March 2017, when Myriam filed a request for dissolution of the marriage, the parties owned a home in Chula Vista, California.  On November 20, 2018, Juan filed a Request for Order seeking:  (1) bifurcation of

However, six of the documents as to which Juan is requesting judicial notice were filed in the underlying case after Myriam filed her notice of appeal:  (1) Myriam's ex parte motion for a stay of the December 4, 2019 order and the court's denial of the motion; (2) an ex parte motion filed by Myriam on May 8, 2020 in which she sought the return of her youngest daughter to her custody and the corresponding order entered by the court granting Juan "physical and legal custody of the child pending further court hearing"; (3) the settled statement of the trial court, entered as a minute order issued on July 15, 2020, (4) the minutes of the trial court from an October 2, 2020 hearing demonstrating that the court suspended child support owed from Juan to Myriam with respect to the parties' two daughters, and indicating that Myriam had a "15% time share . . . for [the parties' son], 0% time share for [the parties' minor daughter]," and the parties' older daughter was no longer a minor; (5) an ex parte order filed by Juan on November 3, 2020 seeking modification of the child support wage garnishment, and the court's partial granting of the request given the outcome of the October 2, 2020 hearing, and (6) the minutes of the trial court from an April 5, 2021 evidentiary hearing pertaining to Juan's requests "regarding Child Support, Child Custody, Child Visitation, [and] Psychological Evaluation (RFO filed 8/1/20)" in which the court adopted a parenting plan that awarded Juan legal custody and primary physical custody of the two minor children.  We grant Juan's request for judicial notice pursuant to Evidence Code sections 452, subdivision (d)(1) and 459, subdivision (a)(1).  Although a reviewing court will ordinarily look only to the record made in the trial court in deciding a question raised by an appeal, a court may nevertheless take judicial notice of matters that were not before the trial court at the time the trial court ruled on the matter or matters at issue on appeal. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1.)  Because these court documents are helpful to this court's understanding of the history of the underlying case and provide context with respect to contentions that have been raised in this appeal, we exercise our discretion to take judicial notice of the documents.  Our granting of judicial notice of these documents should not be understood as providing a basis for our review of any of the trial court's orders other than the December 4, 2019 order, which is the sole order from which Myriam has appealed.

status, (2) the setting of a date for a mandatory settlement conference, and (3) an order for the sale of the marital home.

The trial court deferred consideration of the issues of the sale of the marital home and the status of the dissolution until after the mandatory settlement conference, which was held on July 19, 2019. The parties did not reach a settlement at the mandatory settlement conference, and the court set the remaining matters for an evidentiary hearing.

The court held an evidentiary hearing regarding the remaining issues, including custody and visitation, child support, spousal support, and the division of assets over three days (August 22, September 12, and September 16, 2019). The trial court entered judgment as to the parties' marital status only on September 16, 2019. On October 16, 2019, the court issued an order addressing all of the other issues raised at trial, including the disposition of the parties' property, with the exception of the marital residence. The court deferred entering judgment on Juan's request for an order requiring the sale of the marital residence and ordered a further hearing "on [Myriam's] qualification to buyout the respondent's interest in the home." The court "directed [Myriam] to present evidence to the court of her ability to refinance the home" and stated that the court planned to "review[ ] and consider[ ]" that evidence at a further hearing, set for November 13, 2019.

A settled statement filed by the trial court in July 2020 indicates that a hearing on Myriam's ability to refinance the property did not occur on November 13, 2019. Rather, the matter was continued to December 4, 2019. On that date, the parties, as well as minors' counsel, whom the court had appointed on September 12, 2019, appeared. The settled statement indicates that Myriam "did not present evidence of her ability to refinance the home, and it was ordered sold."

4

In an order issued by the court on December 4, 2019, the trial court stated the following with respect to the sale of the marital home:

> "On or before December 13, 2019, [Juan] shall provide [Myriam] with the names of three realtors.
>
> "On or before December 23, 2019, [Myriam] shall select one of the realtors provided by [Juan] and shall inform [Juan] of her selection.
>
> "The home is to [be] placed on the market.
>
> "The parties shall retain the selected realtor to conduct the sale of the property.
>
> "The parties shall cooperate with the realtor and shall execute all documents necessary to complete the sale."

Myriam filed a timely notice of appeal from the December 4, 2019 order of the trial court. On January 7, 2020, Myriam sought a stay of the trial court's order directing the parties to select a listing agent and sell the marital home. Two days later, the trial court denied her request, concluding that Myriam was required to post a bond pursuant to Code of Civil Procedure section 917.2 in order to obtain a stay of the court's December 4, 2019 order.[3]

_____

[3] It appears that the trial court may have intended to refer to Code of Civil Procedure section 917.4, which provides in part:

> "The perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order appealed from directs the sale, conveyance or delivery of possession of real property which is in the possession or control of the appellant or the party ordered to sell, convey or deliver possession of the property, unless an undertaking in a sum fixed by the trial court is given that the appellant or party ordered to sell, convey or deliver possession of the property will not commit or suffer to be committed any waste thereon and that if the judgment or order appealed

5

## DISCUSSION

A. *To the extent that Myriam is arguing that the trial court erred in ordering the sale of the marital residence, she has failed to demonstrate that the court abused its discretion in making that order*

We begin by noting that Myriam's briefing is difficult to understand and fails to set forth cogent legal arguments. We are mindful that Myriam is appearing in propria persona. However, "[a] self-represented party is to be

---

from is affirmed, or the appeal is withdrawn or dismissed, the appellant shall pay the damage suffered by the waste and the value of the use and occupancy of the property, or the part of it as to which the judgment or order is affirmed, from the time of the taking of the appeal until the delivery of the possession of the property."

In view of the trial court's denial of Myriam's request for a stay of the court's mandatory order of December 4, 2019, requiring the sale of the martial residence, the trial court's order was enforceable, notwithstanding the pendency of Myriam's appeal from that order. Because Code of Civil Procedure section 917.4 permitted the enforcement of the court's order, and because many months had passed since the trial court issued its December 4, 2019 order, on September 8, 2021, we requested supplemental briefing from the parties regarding the status of the sale of the marital residence. The parties informed us that the residence still had not been listed for sale, and that Myriam continues to reside in the home. Juan indicated that Myriam "refuses to comply with or cooperate with the court orders," and that she "continues to reside in the property at issue." He further stated that he "continues to await a ruling from this court, so that the house can be sold." However, as indicated above, the Code of Civil Procedure makes clear that the perfecting of an appeal from an order requiring the sale of real property does not stay enforcement of that order. In order to obtain a stay and avoid the effect of the court's order, Myriam was required to post an undertaking, and there is no evidence in the record to demonstrate that she has done so. It therefore appears that Juan could have sought the trial court's assistance in enforcing the December 4, 2019 order of the trial court requiring the sale of the marital residence; he was not required to wait for resolution of this appeal in order to enforce that order.

6

treated like any other party and is entitled to the same, but no greater, consideration than other litigants having attorneys." (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574.) Thus, Myriam "is not exempt from the rules governing appeals," including the rules governing preparation of an adequate appellate record and presenting legal arguments supported by citations to relevant legal authority and portions of the record. (*Ibid.*; see *Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205 ["The same rules apply to a party appearing in propria persona as to any other party"].) Among the fundamental principles of appellate briefing is that a party must set forth cogent legal arguments and cite the record in support of the points made. Myriam has failed to do so; although she cites to legal authorities, she fails to demonstrate that the authorities on which she is relying are relevant to the issues that she is attempting to raise. The result is that Myriam has, effectively, forfeited her contentions on appeal. (See, e.g., *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [absence of cogent legal argument or citation to authority forfeits the contention; "[w]e are not bound to develop appellants' arguments for them"].)

To the extent that we are able to ascertain Myriam's main argument on appeal, which seems to be that the trial court erred in ordering the sale of the marital residence, we conclude that Myriam has not demonstrated that she is entitled to reversal. From Myriam's briefing, it is clear that she is displeased with the trial court's order. She suggests that the court should have allowed her to retain the home and awarded Juan other assets in order to equalize the distribution of property between the parties.

Although Myriam has not set forth the relevant legal standards on appeal from an order disposing of marital property by directing the parties to sell their residence, it is clear that the Family Code requires an equal division of community property when a marriage is dissolved. (Fam. Code,

7

§ 2550; see also *In re Marriage of Juick* (1971) 21 Cal.App.3d 421, 427 ["Under the Family Law Act clearly the ideal is a mathematically equal division"].)  "[T]he disposition of marital property is within the trial court's discretion, by whatever method or formula will 'achieve substantial justice between the parties.'" (*In re Marriage of Hug* (1984) 154 Cal.App.3d 780, 791–792.)  An appellate court "review[s] the trial court's [methodology in disposition of marital property] under an abuse of discretion standard." (*In re Marriage of Steinberger* (2001) 91 Cal.App.4th 1449, 1459.)

"When conducting an abuse of discretion review, appellate courts consider (1) whether the trial court's factual findings are supported by substantial evidence, (2) whether the trial court followed applicable legal principles, and (3) whether the trial court reasonably exercised its discretionary authority—that is, whether any judge reasonably could have made such an order." (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529.)

Further, basic rules govern all appeals:  " '[A] judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown.  [Citation.]  "In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  '[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' " [Citation.] . . . " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " [Citation.] "Consequently, [appellant] has the burden of providing an adequate record.  [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' " (*In re Marriage of Oliverez* (2019)

8

33 Cal.App.5th 298, 311–312 (*Oliverez*); see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

Myriam has not met her burden to affirmatively demonstrate that the trial court abused its discretion in ordering the sale of the marital residence. The record on appeal does not disclose that the trial court failed to follow applicable legal principles in deciding how to dispose of the parties' marital residence, or that the trial court's decision to require that the residence be sold so that the parties could divide the proceeds of the sale was unreasonable. Myriam nevertheless notes that the home was "the main home for her three children," and that the home is "close by to" their daughters' schools. Essentially, Myriam appears to be suggesting that the sale of the home will have a detrimental effect on the parties' children. There is no indication in the record, however, that the trial court did not consider the effect of the sale of the marital home on the children or otherwise failed to weigh the equities involved here. Further, it appears that although the trial court was ready to order the home sold at the time that it ordered the disposition of the other marital assets, the trial court gave Myriam additional time to demonstrate that she had been approved to refinance the property on her own. However, Myriam was unable to show that she had been approved for a mortgage.[4] In the absence of any indication in the record that Myriam was independently approved to refinance the existing mortgage, there is no basis for concluding that the trial court's order requiring the sale of the

---

[4]     Myriam also appears to argue on appeal that the trial court erred in rejecting evidence that she proffered to show that she was in the process of obtaining the requisite refinancing. We address this argument in part III.B.3, *post*.

9

residence was unreasonable.[5]  With respect to Myriam's suggestion that the court abused its discretion because it should have divided up the parties' assets differently to allow her to retain the home, the court's division of the parties' other assets is not before us in this appeal; the only order from which Myriam has appealed is the court's order requiring the sale of the marital home.

Moreover, to the extent that Myriam may be relying on provisions of the Family Code that permit the court to order a deferred sale of a marital residence (see §§ 3800 et seq.) to suggest that the trial court should have deferred the sale of the home pursuant to these statutory provisions, this argument is unavailing.  The settled statement demonstrates that "no such request for order [for deferred sale of the house] was made to the court."  The trial court could not have abused its discretion in not granting an order that was never requested.

B. *To the extent that we can discern additional arguments that Myriam raises in her opening brief, we conclude that she has not demonstrated reversible error*

1. *The record does not support Myriam's contention that the trial court "erred in disregard[ing] Minor's counsel arguments and Petitioner's statement"*

Myriam appears to suggest that the trial court did not consider statements and commentary provided by appointed minors' counsel at the

---

5      We do not intend to suggest that if Myriam had demonstrated an ability to obtain a mortgage on the property, the trial court would have acted unreasonably in determining that the proper course of action would nevertheless be to require the sale of the residence.  We merely note that in this circumstance, where Myriam was unable to demonstrate her ability to obtain the requisite financing, the trial court's decision to order that the house be sold was reasonable.

hearing concerning the disposition of the marital residence. The record does not support Myriam's contention. The settled statement indicates that the trial court specifically asked minors' counsel for an opinion as to the proposed sale of the house. The court "inquired of minors' counsel as to whether minors' counsel would recommend, based on the information she obtained in the course of her appointment and in the best interests of the children, that the house not be sold." Minors' counsel responded "that *she had no basis to recommend that the house not be sold.*" (Italics added.) The settled statement thus demonstrates that the court specifically sought the views of minors' counsel with respect to the sale of the marital residence, and that minors' counsel provided *no argument* in support of Myriam's contention that the home should not be sold because its sale would be detrimental to the children. We therefore reject the contention that the trial court did not consider the views or opinions of minors' counsel in determining that the appropriate disposition would be to require the sale of the home.

Further, there is no indication from the record that the trial court "disregarded" Myriam's arguments or failed to consider them. Because there is no transcript of the hearing, and the settled statement is silent on the matter, we must make every presumption in favor of the court's ruling, and therefore must presume that the court did, in fact, consider all of the evidence and arguments presented in reaching its decision. (See, e.g., *Oliverez, supra*, 33 Cal.App.5th at pp. 311–312 [" ' "all presumptions in favor of the trial court's action will be made by the appellate court" ' "].) Indeed, the record as a whole demonstrates that in this case, the trial court simply disagreed with Myriam's position and rejected her arguments and "statements" after considering them. Specifically, the court disagreed with Myriam that the sale of the marital residence would be detrimental to the

11

children.[6]  Myriam has not demonstrated that the court abused its discretion or acted improperly in rejecting her argument that the court should award her the marital residence instead of ordering that it be sold.

Because the record does not affirmatively support Myriam's contention that the trial court "disregarded" any argument presented by minors' counsel or by Myriam, we conclude that this contention is without merit.

> 2. *Myriam did not present a record to support her contention that the trial court's decision to order the parties to sell the marital residence was an "emotional decision"*

In her opening brief, Myriam includes a heading stating:  "The court erred in making an emotional decision to put the house for sale in the market after opposing counsel's statement in regards to minor daughter." (Underscore omitted.)  Although Myriam's argument is difficult to discern, we again note that there is no transcript of the hearing, and the settled statement does not include any reference to the purported "statement" made by Juan's attorney, or how the court addressed or responded to that "statement." As a result, there is simply nothing in the record to support Myriam's assertion as to how the court was improperly emotionally influenced by opposing counsel.  Again, it is Myriam's obligation to present a record that *affirmatively* demonstrates error.  (See *In re D.W.* (2011)

---

[6]  Myriam asserts throughout her briefing that the minor children have lived, and continue live, with her in the marital residence, and suggests that this is why the court's order of the sale of the residence continues to be detrimental to them.  Juan disputes Myriam's claims regarding where the children reside.  Although the record is not entirely clear as to how the parties shared custody of the minor children prior to the trial court's December 4, 2019 order, the documents filed in this matter of which we have taken judicial notice suggest that the minor children resided primarily with Juan at the time Myriam filed her opening brief, and that they continue to reside primarily with Juan.

193 Cal.App.4th 413, 417–418.) Myriam has made no affirmative showing of error with respect to her contention that the court made an "<u>emotional decision</u>" about the sale of the residence.

3. *The trial court did not abuse its discretion in declining to consider Myriam's proffered evidence regarding her attempt to obtain refinancing to purchase the home*

Myriam contends that the trial court erred in excluding certain documents from Wells Fargo Bank that she attempted to admit in evidence. According to Myriam, the trial court denied her request to "enter evidence to the court that proved that she was in the process of refinancing her home." We review a trial court's decision to admit or exclude evidence for an abuse of discretion. (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

As an initial matter, Myriam has forfeited this argument by failing to cite to the record regarding which documents she is referring to in her challenge to the trial court's evidentiary ruling. (See *In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [failure to provide adequate record citations forfeits a contention of error]; see also Cal. Rules of Court, rule 8.204(a)(1)(C) & (a)(2)(C) [appellant's opening brief must include a summary of significant facts limited to matters in the record, with any reference to a matter in the record supported by a citation to the volume and page number of the record].)[7]

---

[7]    In fact, the trial court record does not include the documents that Myriam contends she proffered to the trial court, and Myriam's briefing does not specifically and clearly identify which documents she proffered that were rejected, nor does she explain precisely what those documents contained.

13

Myriam has, however, lodged as exhibits in this court certain documents sent to her from Wells Fargo. Presuming that these are the documents that the trial court rejected, these documents demonstrate only that Myriam was in the initial stages of inquiring about obtaining financing. None of the documents demonstrates that Myriam had completed an application for a loan to refinance the property, much less that she had been approved for such a loan and would be able to refinance the mortgage on the home. At most, the documents demonstrate that Myriam had inquired about obtaining a mortgage loan. Given that the trial court had specifically indicated that it would consider evidence that Myriam had the "ability to refinance the home," if the documents lodged with this court were the documents that Myriam attempted to admit in evidence, then the trial court's decision to decline to consider these documents was reasonable. These documents do not demonstrate that Myriam had the ability to refinance the residence; Myriam thus cannot demonstrate that the trial court abused its discretion if it excluded the documents from Wells Fargo that she lodged as exhibits on appeal.

C. *To the extent that Myriam raises issues that were not addressed in the trial court's December 4, 2019 order regarding the sale of the marital residence, this court lacks jurisdiction to consider them*

At various points in her brief, Myriam raises issues about the court's determinations with respect to child support, spousal support, attorney fees, as well as the court's division of other assets that the court addressed in its October 16, 2019 order. However, the only order that Myriam identified in her notice of appeal is the court's December 4, 2019 order, and that order set forth *only* the court's disposition with respect to the sale of the marital home. On appeal, "[o]ur jurisdiction . . . is limited in scope to the notice of appeal and the judgment or order appealed from." (*Polster, Inc. v. Swing* (1985)

14

164 Cal.App.3d 427, 436.)  We therefore have no jurisdiction to consider Myriam's contentions about matters outside the scope of the trial court's December 4, 2019 order requiring the sale of the parties' residence.

IV.

DISPOSITION

The court's December 4, 2019 order is affirmed.  Juan is entitled to his costs on appeal.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

DATO, J.